# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEIGH RICHARD BUSBY, | : |
|    Plaintiff, | : |
| | : |
| v. | : Civil No. 3:16CV664 (AWT) |
| | : |
| NANCY A. BERRYHILL, | : |
| ACTING COMMISSIONER OF SOCIAL | : |
| SECURITY, | : |
|    Defendant. | : |

## ORDER REMANDING CASE

For the reasons set forth below, the decision of the Commissioner is reversed and this case is remanded for additional proceedings consistent with this order.

The court's function when reviewing a denial of disability benefits is first to ascertain whether the Commissioner applied the correct legal principles in reaching a conclusion, and then whether the decision is supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). Absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

The plaintiff argues that remand is required in this case because first, the ALJ failed to follow the treating physician rule; second, the ALJ failed to develop the record; and third, the ALJ's vocational findings are unsupported. The court agrees

that this case must be remanded because the ALJ failed to follow the treating physician rule and the ALJ failed to develop the record, so it does not address the plaintiff's third argument.

"[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)); see also Mariani v. Colvin, 567 F. App'x 8, 10 (2d Cir. 2014) (holding that "[a] treating physician's opinion need not be given controlling weight where it is not well-supported or is not consistent with the opinions of other medical experts" where those other opinions amount to "substantial evidence to undermine the opinion of the treating physician"). "The regulations further provide that even if controlling weight is not given to the opinions of the treating physician, the ALJ may still assign some weight to those views, and must specifically explain the weight that is actually given to the opinion." Schrack v. Astrue, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (citing Schupp v. Barnhart, No. Civ. 3:02CV103 (WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004)). It is "within the province of the ALJ to credit portions of a treating physician's report while

2

declining to accept other portions of the same report, where the record contained conflicting opinions on the same medical condition." Pavia v. Colvin, No. 6:14-cv-06379 (MAT), 2015 WL 4644537, at *4 (W.D.N.Y. Aug. 4, 2015) (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002)).

In determining the amount of weight to give to a medical opinion, the ALJ must consider several factors: the examining relationship, the treatment relationship (the length, the frequency of examination, the nature and extent), evidence in support of the medical opinion, consistency with the record, specialty in the medical field, and any other relevant factors. 20 C.F.R. § 404.1527. In the Second Circuit, "all of the factors cited in the regulations" must be considered to avoid legal error. Schaal v. Apfel 134 F.3d 496, 504 (2d Cir. 1998). Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand. Snell v. Apfel, 177 F.3d 128, 133-34 (2d Cir. 1999)(citing Schaal, 134 F.3d at 505).

In Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999), the court explained the ALJ's obligation to fill gaps in the administrative record prior to rejecting a treating physician's diagnosis:

> [A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record. See Schaal, 134 F.3d at 505 ("[E]ven

3

if the clinical findings were inadequate, it [i]s the ALJ's duty to seek additional information from [the treating physician] sua sponte."); see also Hartnett v. Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998) ("[I]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly"). In fact, where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel or . . . by a paralegal." Perez, 77 F.3d at 47; see also Pratts, 94 F.3d at 37 ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must [] affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.'[. . .]") (citations omitted)

Rosa, 168 F.3d at 79.

In determining when there is "inadequate development of the record, the issue is whether the missing evidence is significant." Santiago v. Astrue, 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing Pratts v. Chater, 94 F.3d 34, 37–38 (2d Cir. 1996)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 129 S. Ct. 1696, 1706 (2009). The ALJ "does not have to state on the record every reason justifying a decision." Brault v. Social Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012). "'Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted.'" Id. (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)). In addition, "[a]n

ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." Id.

> The ALJ must request additional information from a treating physician . . . when a medical report contains a conflict or ambiguity that must be resolved, the report is missing necessary information, or the report does not seem to be based on medically acceptable clinical and diagnostic techniques. Id. § 404.1512(e)(1). When "an ALJ perceives inconsistencies in a treating physician's report, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly," Hartnett, 21 F. Supp. 2d at 221, by making every reasonable effort to re-contact the treating source for clarification of the reasoning of the opinion. Taylor v. Astrue, No. 07-CV-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008)[(holding that the ALJ erred in failing to re-contact the treating source for clarification where ALJ gave little weight to the opinion because objective clinical evidence in the record did not support the treating physician's conclusion that plaintiff was "totally disabled.")]

Toribio v. Astrue, No. 06CV6532(NGG), 2009 WL 2366766, at *8-*10 (E.D.N.Y. July 31, 2009) (holding that the ALJ who rejected the treating physician's opinion because it was broad, "contrary to objective medical evidence and treatment notes as a whole", and inconsistent with the state agency examiner's findings had an affirmative duty to re-contact the treating physician to obtain clarification of his opinion that plaintiff was "totally incapacitated").

In Schaal v. Apfel, 134 F.3d 496 (2d Cir. 1998), the court held that the lack of specific clinical findings in the treating physician's report did not, by itself, provide "good reason" justifying the ALJ's failure to credit the physician's opinion.

5

Id. at 505.  The court stated that even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from the treating physician sua sponte.  Id. (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)).

In Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998), the court remanded the case to the trial court to consider the claimant's contention that in light of Schaal the ALJ should have acted affirmatively to seek out clarifying information concerning perceived inconsistencies between a treating physician's reports.  See id. at 118-19.  The court reasoned that the doctor might have been able to provide a medical explanation for the plaintiff's condition.  Likewise, the doctor might have been able to offer clinical findings in support of his conclusion.  The treating physician's failure to include this type of support for the findings in his report did not mean that such support did not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case.  See id.

With respect to the ALJ's failure to follow the treating physician rule, the court agrees with the plaintiff's statement that the deference to be given to the treating physician's opinions is absent from the ALJ's decision.  See Mem. in Supp. of Mot. to Reverse the Decision of Commissioner at 5

6

("Plaintiff's Memorandum"). Moreover, the court agrees with the plaintiff's critique of the ALJ's decision set forth at Pages 6 to 17 of the Plaintiff's Memorandum. In reviewing the ALJ's decision, the court was particularly struck by the fact that (1) the ALJ seems to have evaluated the medical evidence himself, as opposed to evaluating and assigning weight to the treating source opinions; (2) the ALJ concluded that he could give <u>no weight</u> to Dr. Bejarano's opinion; (3) the ALJ purports to give little weight to Dr. Andres' opinion but in fact appears to have given none; (4) when discussing the January 2014 report ("described no antalgic gait, paraspinal tenderness or decreased forward flexion") the ALJ chose to ignore the MRI examination that occurred shortly thereafter and the fact that Dr. Andres' physical medical source statement was given in June 2014; and (5) instead of acknowledging that the global assessment functioning scores were consistent with the opinions of the treating physicians, the ALJ simply dismissed them because such scores do not necessarily mean a person is unable to work.

The ALJ's failure to develop the record is particularly noteworthy here. The ALJ places great weight on the January 2013 assessment from Jen Kempf, LMFT and Daisy Jacob, MD, but places no weight on the portion of that document that gives every appearance of also being from Kempf and Jacob. The ALJ knew or should have known from the document that it was

7

incomplete but took no steps to obtain the complete document. This was a very significant omission because the document on which the ALJ placed no weight explicitly stated that the plaintiff had a condition or combination of conditions that prevented him from working, while the document on which the ALJ placed great weight did not explicitly address this question. Rather the ALJ provided his own interpretation of the responses to that questionnaire. It is difficult to see how the ALJ could have believed he was acting consistently with his affirmative duty to fill any clear gaps in the administrative record prior to rejecting a treating physician's diagnosis.

It is also noteworthy that the ALJ gave no weight to Dr. Bejarano's opinions because, among other reasons, the doctor "merely put checkmarks to primarily subjective symptoms" (R. 138), but had the ALJ sought additional information because he felt the clinical findings were inadequate, such information would have been provided, as evidenced by Dr. Bejarano's November 4, 2014 report. See R. 116-120.

For the reasons set forth above, Plaintiff's Motion to Reverse the Decision of the Commissioner (Doc. Nos. 21, 22) is hereby GRANTED, and Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. No. 25) is hereby DENIED. This case is hereby REMANDED to the Commissioner for rehearing consistent with this ruling.

The Clerk shall close this case.

It is so ordered.

Dated this 18th day of August 2017, at Hartford, Connecticut.

                                                /s/AWT
                                      Alvin W. Thompson
                              United States District Judge